1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT
9              CENTRAL DISTRICT OF CALIFORNIA
10
11   DAVON CAREY GRIFFITH,              Case No. CV-14-03251-JVS (KES)
12                    Petitioner,
13       v.                            FINAL REPORT AND
                                       RECOMMENDATION OF UNITED
14   SANDRA ALFARO, Warden,            STATES MAGISTRATE JUDGE
15                    Respondent.
16
17       This Final Report and Recommendation is submitted to the Honorable James

18   V. Selna, United States District Judge, pursuant to 28 U.S.C. § 636 and General

19   Order 194 of the United States District Court for the Central District of California.

20                              **I.**

21                        **INTRODUCTION**

22       On April 28, 2014, Petitioner filed his Petition for Writ of Habeas Corpus by

23   a Person in State Custody pursuant to 28 U.S.C. § 2254 (the "Petition"). (Dkt. 1.)

24   On March 23, 2015, with leave from this Court, Petitioner filed his First Amended

25   Petition ("FAP") to add additional exhausted claims. (Dkt. 29.) Petitioner is a

26   California state prisoner currently serving a sentence of eighteen years for first

27   degree robbery, plus a consecutive two years and eight months for a previous

28   conviction of possession of cocaine for sale.

                              1

1     Respondent filed an answer to the FAP on September 28, 2015. (Dkt. 41.) In

2 response, Petitioner filed a traverse on January 22, 2016. (Dkt. 50.) For the reasons

3 discussed below, the Court recommends that the Petition be DENIED.

4 **II.**

5 **BACKGROUND**

6     On October 16, 2009, Davon Carey Griffith ("Petitioner") and David

7 Haliburton robbed a drug dealer named George Lopez. (Lodged Document ("LD")

8 1; 1 Clerk's Transcript ("CT") 173.) Petitioner broke down the door to Lopez's

9 home and demanded that Lopez give him money. (Id.) Lopez was struck with a gun

10 during the robbery. (Id.) Petitioner then tied up Lopez with a zip tie and ransacked

11 the house, taking a watch, jewelry, and personal checks, as well as $1,100 from

12 Lopez's person. (Id.) When subsequently arrested by the police, Petitioner had

13 Lopez's property in his possession. (Id.) Haliburton was caught at the scene with a

14 semiautomatic handgun in his possession. (Id.)

15     Petitioner's preliminary hearing in the robbery case was held on November 2,

16 2009. (1 CT 3.) Lopez testified at the hearing and was cross-examined by defense

17 counsel. (1 CT 5-33.) Petitioner was held to answer on the two charged offenses—

18 Penal Code § 211 (Robbery) and Penal Code § 245(a)(1) (Assault With a Deadly

19 Weapon).[1] (1 CT 47.) Petitioner was arraigned on the charges on November 16,

20 2009. (1 CT 50.) His bail was later lowered from $250,000 to $175,000, and

21 Petitioner had been released from custody by his next court date on June 8, 2010. (1

22 CT 60, 62.)

23     On August 5, 2010, while out on bail in his robbery case, Petitioner was

24 arrested for selling cocaine to an undercover police officer. (1 CT 174, 179.) Based

25 _____

26     [1] The People subsequently filed an Amended Information which alleged that
Petitioner also violated Penal Code § 245(b) (Assault with a Semiautomatic

27 Firearm) and Penal Code § 459 (Residential Burglary). (1 CT 91.)

28

on this new offense, Petitioner pled guilty to violating Health and Safety Code § 11351.5 (Possession of Cocaine Base for Sale) on January 31, 2011, and further admitted he had been convicted of a prior strike offense.[2] (LD 8 at 62.) On April 15, 2011, Petitioner was sentenced to six years in state prison in his cocaine case.[3] (Dkt. 58 at 13.)

Although Petitioner pled guilty in his cocaine case, he went to trial in his robbery case. Lopez exercised his Fifth Amendment right against self-incrimination at trial and did not testify. The court admitted Lopez's preliminary hearing testimony as evidence. On July 22, 2011, a jury convicted Petitioner of violating Penal Code § 211(Robbery) and § 459 (Residential Burglary). The jury also found that a principal in the offense was armed with a handgun during the robbery. (1 CT 133, 135.) Petitioner was acquitted of all other charges and enhancements. (1 CT 133-136.)

Petitioner was sentenced in his robbery case on September 26, 2011. (1 CT 232.) The People asked that Petitioner be sentenced to eighteen years in prison. (1 CT 172-73). Petitioner faced three, four, or six years in prison as a result of the robbery conviction, and the court chose the high term of six years based on

_____

[2] Petitioner was convicted of a strike offense in December 2002, when he was convicted of attempted robbery and sentenced to four years in state prison. (1 CT 178.)

[3] At the time, Possession of Cocaine Base for Sale was punishable by three, four, or five years in state prison. Cal. Health and Safety Code § 11351.5 (2011). When a defendant with one prior strike is convicted of a subsequent felony, the second-strike provision of the Three Strikes law requires that he be sentenced to "twice the term otherwise provided as punishment for the current felony conviction." Cal. Pen. Code § 667(e)(1). Here, Petitioner was sentenced to a base term of three years, which was then doubled due to the prior strike conviction. (Dkt. 58 at 15.)

1    aggravating factors.[4] (1 CT 176-79.) Petitioner's prior strike conviction doubled the

2    term chosen by the court. (1 CT 179.) Because the prior strike was also a serious

3    felony, the court was required to add another five years to Petitioner's sentence.

4    (Id.) One more year was added for the principal firearm allegation. (Id.)

5            Lastly, Petitioner's new conviction and sentence required that Petitioner be

6    resentenced in his previous cocaine case. Although Petitioner's robbery and cocaine

7    sentences would run consecutively, see Penal Code § 1170.12(a)(6), Petitioner

8    would no longer serve the six years originally imposed in the cocaine case. Instead,

9    the cocaine sentence became subordinate to the robbery sentence, and Petitioner

10   could serve no more than one-third of the middle term prescribed for this felony.

11   See Penal Code § 1170.1(a) ("The subordinate term for each consecutive offense

12   shall consist of one-third of the middle term of imprisonment prescribed for each

13   other felony conviction for which a consecutive term of imprisonment is imposed,

14   and shall include one-third of the term imposed for any specific enhancements

15   applicable to those subordinate offenses"). The middle term for a violation of

16   Health and Safety Code § 11351.5 at that time was four years.[5] The sentencing

17   judge added one-third of the doubled middle term, adding two years and eight

18   months to Petitioner's aggregate sentence. (4 RT 646.)

19   _____

20           [4] The Court also imposed a twelve year sentence for Petitioner's burglary
     conviction, which was stayed pursuant to California Penal Code section 654.

21

22           [5] At the time of Petitioner's sentencing, a violation of Health and Safety
     Code § 11351.5 was punishable by three, four, or five years in state prison. After

23   January 1, 2015, the crime was punishable by two, three, or four years in state
     prison. The California Court of Appeal has since held that defendants sentenced for a

24   violation of § 11351.5 before January 1, 2015, can be resentenced under the
     amended statute. See People v. Keith, 235 Cal. App. 4th 983, 985 (2015). Keith,

25   however, involved a direct appeal, rather than a collateral attack. Thus, the
     defendant's conviction was not yet final—an important factor in the court's

26   decision. Id. No court has held that Keith applies to cases on habeas review.

27

28

                                        4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.

### CLAIMS

Petitioner asserts thirteen grounds for relief:

Ground One: Petitioner was denied his Sixth and Fourteenth Amendment rights to confront witnesses when the trial court approved Lopez's blanket invocation of the Fifth Amendment privilege. (FAP at 7, 17, 21-23.)

Ground Two: Petitioner was denied his Sixth and Fourteenth Amendment rights to effectively cross-examine the victim at the preliminary hearing, because the victim was not assisted by a Spanish-language interpreter at that proceeding. (FAP at 7, 17, 24.)

Ground Three: Petitioner was denied his Sixth and Fourteenth Amendment rights to confront witnesses when the victim's preliminary hearing testimony was read to the jury, because the opportunity and motive to cross-examine the victim at the preliminary hearing was not the same as at trial. (FAP at 7-8, 17, 24-27.)

Ground Four: Petitioner was denied his Sixth and Fourteenth Amendment rights to confront witnesses when the trial court allowed into evidence testimonial hearsay statements of Petitioner's co-conspirator referenced in the victim's preliminary hearing testimony. (FAP at 8, 17, 28.)

Ground Five: Petitioner was denied his Sixth and Fourteenth Amendment rights to confront witnesses when the trial court allowed into evidence testimonial hearsay statements of the victim captured on wiretaps. (FAP at 8, 17, 29-31.)

Ground Six: Petitioner was denied his Sixth and Fourteenth Amendment rights to a fair trial when the trial court admitted the victim's inadmissible hearsay statements captured on wiretaps. (FAP at 9, 17, 31-35.)

Ground Seven: Petitioner was denied his Sixth and Fourteenth Amendment rights to a fair trial when the trial court failed to sua sponte instruct the jury on lesser included offenses. (FAP at 9, 17, 35-37.)

Ground Eight: Petitioner's due process rights were violated when the

prosecution failed to prove the firearm allegation beyond a reasonable doubt. (FAP at 9, 17, 37-38.)

Ground Nine: Petitioner's Sixth and Fourteenth Amendment rights to a jury trial were violated because the firearm allegation was not found true by a jury. (FAP at 9-10, 17-18, 39.)

Ground Ten: Petitioner was denied his Fifth, Sixth, Eighth, and Fourteenth Amendment Rights when the government breached his plea agreement in Superior Court case number BA374493 ("the cocaine case"), and the trial court erred by resentencing him in that case. (FAP at 10, 18, 40-41.)

Ground Eleven: Petitioner was denied his Sixth and Fourteenth Amendment rights to the effective assistance of counsel when his trial counsel failed to object to each of the errors asserted in Grounds One through Ten. (FAP at 10, 28, 41-42.)

Ground Twelve: Petitioner was denied his Sixth and Fourteenth Amendment rights to the effective assistance of counsel when his appellate attorney failed to raise each of the errors asserted in Grounds One through Ten. (FAP at 10, 18, 42-43.)

Ground Thirteen: Petitioner was denied his Sixth and Fourteenth Amendment rights because the cumulative effect of the aforementioned errors prejudiced his entire trial and/or his direct appeal. (FAP at 11, 18, 44.)

## IV.

## STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable

1    application of, clearly established Federal law, as determined by the

2    Supreme Court of the United States; or (2) resulted in a decision that

3    was based on an unreasonable determination of the facts in light of the

4    evidence presented in the State court proceeding.

5  28 U.S.C. § 2254(d). The "clearly established Federal law" that controls federal

6  habeas review of state court decisions consists of holdings (as opposed to dicta) of

7  Supreme Court decisions "as of the time of the relevant state court decision."

8  Williams v. Taylor, 529 U.S. 362, 412 (2000).

9    Although a particular state court decision may be both "contrary to" and "an

10  unreasonable application of" controlling Supreme Court law, the two phrases have

11  distinct meanings. Williams, 529 U.S. at 391, 413. A state court decision is

12  "contrary to" clearly established federal law if the decision either applies a rule that

13  contradicts the governing Supreme Court law, or reaches a result that differs from

14  the result the Supreme Court reached on "materially indistinguishable" facts. Early

15  v. Packer, 537 U.S. 3, 8 (2002) (per curiam); Williams, 529 U.S. at 405-06.

16    State court decisions that are not "contrary to" Supreme Court law may be set

17  aside on federal habeas review "if they are not merely erroneous, but an

18  *unreasonable* application of clearly established federal law, or based on an

19  *unreasonable* determination of the facts." Early, 537 U.S. at 11 (citation omitted).

20  A state court decision that correctly identified the governing legal rule may be

21  rejected if it unreasonably applied the rule to the facts of a particular case.

22  Williams, 529 U.S. at 406-10, 413 (e.g., the rejected decision may state the

23  Strickland standard correctly but apply it unreasonably). However, to obtain federal

24  habeas relief for such an "unreasonable application," a petitioner must show that the

25  state court's application of Supreme Court law was "objectively unreasonable."

26  Woodford v. Visciotti, 537 U.S. 19, 24-27 (2002); Williams, 529 U.S. at 413. An

27  "unreasonable application" is different from an erroneous or incorrect one.

28  Williams, 529 U.S. at 409-10; Woodford, 537 U.S. at 25. Moreover, review of state

court decisions under Section 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." <u>Cullen v. Pinholster</u>, 563 U.S. 170, 180 (2011).

As the Supreme Court explained:

Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here [i.e., where there was no reasoned state court decision], could have supported, the state court's decision; and then it must ask whether it is possible fair-minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.

<u>Harrington v. Richter</u>, 562 U.S. 86, 102 (2011). Furthermore, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." <u>Id.</u> at 103.

On appeal, appointed counsel for Petitioner filed a brief which raised no issues but requested an independent review of the record pursuant to <u>People v. Wende</u>, 25 Cal.3d 436 (1979). <u>See People v. Griffith</u>, 2012 WL 3185825, at *2 (Cal. Ct. App. 2012). Petitioner, however, filed a brief raising a sufficiency of the evidence claim that does not correspond to any of the claims raised in the instant FAP. <u>Id.</u> The California Court of Appeal affirmed Petitioner's conviction and sentence. <u>Id.</u>

Petitioner's first ground for federal habeas relief was presented to the Los Angeles Superior Court ("Superior Court") in a state petition for writ of habeas corpus, filed on July 9, 2013.[6] (LD 4 at 25, at Ground Three.) The Superior Court

---

[6] In his 2013 petition for state habeas review, Petitioner also raised two additional claims; (1) an ineffective assistance of counsel claim for trial counsel's (Cont.)

denied the petition in a reasoned decision. (Id.) Petitioner presented the same claim to the California Court of Appeal and the California Supreme Court. Both summarily denied the claim. (LD 6; LD 7.) For purposes of applying AEDPA, § 2254(d), the Court will look to the Superior Court's 2013 decision as the relevant state-court adjudication on the merits for Ground One. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.").

All thirteen grounds were presented in Petitioner's second state habeas petition, filed on June 17, 2014.[7] (See LD 4 at 26.) They were denied by the Superior Court's 2014 reasoned decision, followed by summary denials by the California Court of Appeal and the California Supreme Court. (LD 4 at 26-28; LD 9; LD 11.) As to Grounds Two through Four, Six through Ten, and Thirteen, the Court will look to the Superior Court's 2014 decision as the relevant state-court adjudication on the merits.[8] See Gonzales v. Brown, 585 F.3d 1202, 1206 (9th Cir,

---

failure to obtain a specific detective as a witness or present certain photos of the crime scene; and (2) a Brady violation claim for failure to disclose evidence of Lopez's involvement in the selling of narcotics. (LD 3 at 3-5, 8-9.) The Superior Court rejected all of Petitioner's claims. (LD 4 at 25.) These additional claims do not correspond to any claims raised in the instant FAP.

[7] Respondent was unable to obtain a copy of the Petitioner's 2014 habeas corpus petition filed with the Superior Court. (Answer at 20.) However, the Court assumes that the claims in the Superior Court petition were identical to those discussed in the California Court of Appeal decision filed just two weeks after the Superior Court denied the petition. (See LD 8.) Identical claims were also presented to the California Supreme Court (See LD 10), and in Petitioner's FAP to this Court.

[8] Ground One was reintroduced to the Superior Court in Petitioner's 2014 petition. In its 2014 decision, the Superior Court denied the claim, stating that it had been "previously ruled on and denied." (LD 4 at 26.) Thus, the Court will look through the 2014 decision on Ground One to the Superior Court's 2013 decision as the relevant state-court adjudication on the merits. See Ylst, 501 U.S. at 803 (1991); (Cont.)

2009) (federal habeas courts "apply AEDPA deference to any state court decision on the merits").

In his 2014 habeas corpus petition to the Superior Court, Petitioner's claim in Ground Five was that the admission of Lopez's wiretapped statements violated his Confrontation Clause rights.[9] The Superior Court addressed this claim as a challenge to the admission of the victim's preliminary hearing testimony. The Superior Court's response to Ground Five is as follows: "it is well settled that an unavailable witness who testified at a preliminary hearing may have his/her preliminary hearing testimony read during trial." (LD 4 at 27.) This evidentiary ruling does not fully respond to Petitioner's federal claim. Thus, the Superior Court did not reach a decision on the merits with regard to Ground Five.

Additionally, the Superior Court's decision was erroneous with respect to Grounds Eleven and Twelve. These ineffective assistance of counsel claims were raised for the first time in Petitioner's 2014 habeas petition to the Superior Court. The Superior Court rejected those claims on the grounds that the "2nd District Court of Appeal and the California State Supreme Court both found no such error. This court concurs." (LD 4 at 27-28.) However, Grounds Eleven and Twelve had not been previously presented to neither the California Court of Appeal nor the California Supreme Court at the time the Superior Court ruled on the claims.

_____

Baker v. Fleming, 423 F.3d 1085, 1093 (9th Cir. 2005) (where the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous decision it is acceptable for the federal court to look at both state court decisions to fully ascertain the reasoning of the last decision).

[9] As noted above, the Court does not have a copy of Petitioner's 2014 habeas petition. However, this was Ground Five in his petition before the California Court of Appeal and the California Supreme Court, as well as his Ground Five claim before this Court. (LD 8 at 28-30; LD 10 at 37-39; FAP at 29-31.) The Court assumes that the same claim was presented to the Superior Court.

1    Accordingly, the California Court of Appeal's denial cannot be presumed to

2    have rested on the Superior Court's 2014 decision with respect to Grounds Five,

3    Eleven, and Twelve. Ylst, 501 U.S. at 804 ("[The Court] do[es] not suggest that the

4    [look-through] presumption is irrebuttable; strong evidence can refute it."). To

5    presume that the Court of Appeal's denial rested on these inaccurate grounds would

6    be "simply a most improbable assessment of what actually occurred." Id. The

7    California Court of Appeal explicitly stated that it read and considered Petitioner's

8    habeas petition and the file pertaining to the underlying conviction. (LD 9.)

9    Therefore, the Court will assume that the Court of Appeal adopted an alternative

10   reason on the merits to reject these three claims. Accordingly, because the Court of

11   Appeal's adjudication is unexplained, the question under § 2254 is "whether there

12   is any reasonable argument supporting the state court's denial of relief." Richter,

13   562 U.S. at 98, 105.

14                                      **V.**

15                                 **DISCUSSION**

16   **A.      Ground One: Trial Court's Acceptance of Lopez's Blanket Invocation of**

17           **the Fifth Amendment.**

18           According to Petitioner, the trial court violated his Sixth and Fourteenth

19   Amendment rights to confront witnesses against him when it approved the sole

20   complaining witness's blanket invocation of the Fifth Amendment during trial.

21   (FAP at 7, 17, 21-23.) The Court disagrees.

22           **1.  Relevant Proceedings.**

23           The victim and sole complaining witness, George Lopez, testified at the

24   preliminary hearing on November 2, 2009. (1 CT 5-33.) At a pre-trial hearing on

25   June 15, 2011, Lopez appeared in court, was sworn as a witness, and indicated that

26   he wished to invoke his Fifth Amendment right not to incriminate himself. At the

27   time, Lopez was a defendant in a pending drug case. (See 2 Reporter's Transcript

28   ("RT") 113, 115.) He indicated that he had spoken to an attorney, who was not

                                      11

present. (2 RT 55-59.) The court ultimately continued the hearing so that Lopez's attorney could be present to assist him. (2 RT 59.)

Lopez and his attorney appeared in court the next morning. (2 RT 108-09.) Lopez's attorney noted that he would allow Lopez to answer questions relating to his name or date of birth, but he would advise Lopez not to answer questions related to "his occupation, any criminal charges pending against him, [or] anything that can be used in an open proceeding that I'm currently representing him[.]" (2 RT 115.) The first question posed by the prosecutor was "Mr. Lopez, are you a drug dealer?" (2 RT 110.) Lopez responded, "My answer is yes, but I want to take the Fifth Amendment." (Id.) Petitioner's counsel argued that by answering the question, Lopez waived his Fifth Amendment rights. Both the prosecutor and defense counsel noted that to the extent Lopez would refuse to answer questions on cross-examination, his direct examination would be stricken. In that situation, defense counsel preferred that he not testify on direct examination at all. (2 RT 116.) As a result, the trial court found that Lopez's invocation rendered him unavailable as a witness and that his preliminary hearing testimony could be introduced in lieu of testimony at trial.[10] (2 RT 230.)

Defense counsel asked the court to require Lopez to invoke his Fifth Amendment right before the jury, or at least have him shown to the jury. The trial court denied this request. (2 RT 60, 114; 1 CT 110-112.) At trial, Lopez's preliminary hearing testimony was read to the jury. (3 RT 265-99.)

_____

[10] In his Traverse, Petitioner contends that the trial court never deemed Lopez unavailable, in compliance with the procedures of Cal. Evid. Code § 240. (Traverse at 7.) To the extent that Petitioner's argument alleges violations of state evidentiary rules, it does not warrant federal habeas corpus relief. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). In any case, Petitioner's contention is wrong; the trial court expressly found that Lopez was unavailable to testify as a witness in light of his invocation of the Fifth Amendment. (2 RT 230.)

1    On habeas review, the Superior Court's 2013 decision denied relief on this
2    claim, stating, "George Lopez was subject to cross-examination. The Court of
3    Appeal found no error in this court's handling of the testimony set forth during the
4    preliminary hearing." (LD 4 at 25.)

5    **2. Applicable Law.**

6    The Sixth Amendment provides that "[i]n all criminal prosecutions, the
7    accused shall enjoy the right … to be confronted with the witnesses against him."
8    U.S. Const. amend. VI. The Confrontation Clause ordinarily bars "admission of
9    testimonial statements of a witness who did not appear at trial unless he was
10   unavailable to testify, and the defendant had had a prior opportunity for cross-
11   examination." Crawford v. Washington, 541 U.S. 36, 53-54 (2004).

12   The Fifth Amendment provides that "[n]o person … shall be compelled in
13   any criminal case to be a witness against himself." U.S. Const. amend. V. The
14   privilege "must be accorded liberal construction" and applies both to "answers that
15   would in themselves support a conviction" and "those which would furnish a link in
16   the chain of evidence needed to prosecute the claimant." Hoffman v. United States,
17   341 U.S. 479, 486 (1951). The invocation of the Fifth Amendment privilege against
18   self-incrimination "must be confined to instances where the witness has reasonable
19   cause to apprehend danger from a direct answer." Id.

20   **3. Analysis.**

21   Petitioner cites Ninth Circuit precedent for the proposition that blanket
22   invocations of a witness's Fifth Amendment privilege should not be permitted
23   unless the trial court knows that the witness can legitimately refuse to answer all
24   relevant questions. (FAP at 22.); see U.S. v. Bodwell, 66 F.3d 1000, 1001 (9th Cir.
25   1995) ("The only way the Fifth Amendment can be asserted as to testimony is on a
26   question-by-question basis."); U.S. v Pierce, 561 F.2d 735, 741 (9th Cir. 1977) ("A
27   proper application of this standard requires that the Fifth Amendment claim be
28   raised in response to specific questions propounded by the investigating body.");

1 | United States v. Vavagas, 151 F.3d 1185, 1192 (9th Cir. 1998) ("The court's duty
2 | to scrutinize a witness' invocation of the Fifth Amendment is particularly weighty
3 | where, as here, the witness makes a blanket assertion of the privilege.").

4 |      Under AEDPA, however, Petitioner's claim must fail. There is no clearly
5 | established Supreme Court authority establishing that a witness's blanket
6 | invocation of his Fifth Amendment right against self-incrimination violates the
7 | Confrontation Clause. See Arredondo v. Ortiz, 365 F.3d 778, 782 (9th Cir. 2004)
8 | ("Hoffman…[does not] hold that the [Fifth Amendment] privilege must always be
9 | invoked question-by-question); Woods v. Adams, 631 F. Supp. 2d 1261, 1292
10 | (C.D. Cal. 2009) ("The Supreme Court has never explicitly held that a trial judge
11 | may not accept a witness's 'blanket invocation' of the Fifth Amendment privilege
12 | without first subjecting the witness to particular questions."). Accordingly, the
13 | Superior Court's rejection of this claim was neither contrary to nor an unreasonable
14 | application of Supreme Court precedent.

15 |      Neither was the Superior Court's rejection of Petitioner's claim an
16 | objectively unreasonable determination of the facts. As noted above, testimonial
17 | statements of a witness not testifying at trial can be admitted if the witness is
18 | unavailable and the defendant had an earlier opportunity to cross-examine the
19 | witness. See Crawford, 541 U.S. at 53. Lopez's blanket invocation of his Fifth
20 | Amendment privilege certainly made him unavailable. Petitioner had an
21 | opportunity to cross-examine Lopez at the preliminary hearing. Therefore the
22 | Superior Court reasonably concluded that Petitioner's confrontation rights were not
23 | violated.

24 |      Petitioner is not entitled to relief on Ground One.

25 | **B.**    **Grounds Two and Three: Admission of Lopez's Preliminary Hearing**
26 |       **Testimony.**

27 |      In Ground Two, Petitioner contends that his Sixth and Fourteenth
28 | Amendment rights to cross-examine Lopez effectively during his preliminary

1   hearing testimony were violated because Lopez was not assisted by a Spanish-
2   language interpreter. (FAP at 7, 17, 24.) In Ground Three, Petitioner claims that he
3   was denied his Sixth and Fourteenth Amendment rights to confront witnesses
4   because the opportunity and motive to cross-examine Lopez at the preliminary
5   hearing were not the same as at trial. (FAP at 7-8, 17, 24-27.)

6   **1.   Applicable Law.**

7       The Confrontation Clause guarantees the right to cross-examine witnesses.
8   Pointer v. Texas, 380 U.S. 400, 404, 406-07 (1965). The primary purpose of the
9   Confrontation Clause is to secure the opportunity for cross-examination so that the
10  defendant can test the believability of the witness and the truth of his or her
11  testimony by examining the witness's story, testing the witness's perceptions and
12  memory, and impeaching the witness. Delaware v. Van Arsdall, 475 U.S. 673, 678
13  (1986). "The Confrontation Clause guarantees only 'an opportunity for effective
14  cross-examination, not cross-examination that is effective in whatever way, and to
15  whatever extent, the defense might wish." United States v. Owens, 484 U.S. 554,
16  559 (1988) (quoting Kentucky v. Stincer, 482 U.S. 730, 739 (1987)).

17  **2.   Petitioner's Interpreter Claim.**

18      At the preliminary hearing, Lopez was not assisted by a Spanish-language
19  interpreter. (See 1 CT 5-33.). At a later pre-trial hearing, the prosecutor asked
20  Lopez whether he would feel more comfortable with a Spanish-language interpreter
21  at the next hearing. Lopez indicated that he wanted an interpreter. (2 RT 60.) The
22  next day, when Lopez invoked his Fifth Amendment rights against self-
23  incrimination, he was aided by a Spanish-language interpreter. (2 RT 108.)

24      The Superior Court's 2014 decision denied Petitioner's claim, stating that the
25  preliminary hearing judge and the trial court judge were both satisfied with Lopez's
26  ability to speak English. (LD 4 at 26.)

27      As an initial matter, the Supreme Court has never held that failure to provide
28  an interpreter to a prosecution witness is a violation of a defendant's right to

effective cross-examination. See Vasquez v. Kirkland, 572 F.3d 1029, 1036 (9th Cir. 2009) (finding no clearly established Supreme Court authority holding that it is "a violation of defendant's Confrontation Clause rights where the limitations on the effectiveness of cross-examination resulted from the witness's own physical impairments," in a case where the witness's interpreter was unable to properly convey questions from the defense); Tin Tri Nguyen v. Tilton, 2009 WL 839278, at *18 (N.D. Cal. Mar. 30, 2009) ("[T]he United States Supreme Court has not yet recognized a constitutional right to a court-appointed interpreter."). Accordingly, the Superior Court's denial of Petitioner's claim could neither have been contrary to, nor an unreasonable application of, clearly established law.

The Superior Court's 2014 decision on this claim was also objectively reasonable. Contrary to Petitioner's assertion (FAP at 26), the trial court did not make a finding that Lopez was unable to testify effectively without an interpreter. Rather, Lopez was simply asked whether he would feel more comfortable with the assistance of an interpreter at the second hearing. (2 RT 60.) There is nothing in the record to indicate that the preliminary hearing judge was unsatisfied with Lopez's English-speaking abilities. Lopez was able to understand and intelligibly answer the questions put to him by defense counsel at the preliminary and pre-trial hearings. (See 1 CT 5-33; 2 RT 55-60.) Accordingly, the Superior Court reasonably determined that Petitioner was not prevented from effectively cross-examining Lopez.

Petitioner is not entitled to relief on Ground Two.

### 3. Petitioner's "Opportunity and Motive" Claim.

Petitioner claims that his opportunity and motive to cross-examine Lopez at the preliminary hearing was not the same as at trial. (FAP at 7-8, 17, 24-27.) The Court disagrees.

Petitioner argues that his cross-examination of Lopez at the preliminary hearing was tainted by the judge's continued interjections to ask allegedly "leading

and nonresponsive objectionable questions." (FAP at 26.) Petitioner argues that allowing this line of questioning, which defense counsel would have objected to if asked at trial, corrupted the proceedings to such an extent that Petitioner's "interest, opportunity, and motive" to cross-examine Lopez at the preliminary hearing were not the same as at trial. (Id.)

The Superior Court's 2014 decision rejected this claim as follows:

> The right of confrontation of witnesses is not absolute, and may in the appropriate circumstances bow to other legitimate interests in the criminal trial process. An exception to the constitutional witness confrontation requirement exists where the witness is unavailable, has given testimony at a previous judicial proceeding against the same defendant, and was subject to cross-examination by that defendant. The Federal Constitution guarantees an opportunity for effective cross-examination, not a cross-examination that is as effective as a defendant might prefer.

(LD 4 at 26.)

The Superior Court reasonably rejected Petitioner's claim. Petitioner had the opportunity to cross-examine Lopez at the preliminary hearing. There is no indication that examination at the preliminary hearing was limited in scope. There is nothing in the record to suggest that Petitioner's motive, interest, or opportunity to cross-examine Lopez at the preliminary hearing was different than at trial. Rather, Petitioner's interest in cross-examination was identical; i.e., to undermine the credibility of Lopez's testimony and to bolster Petitioner's story that Lopez was in control of events during the alleged robbery. (See 4 RT 580-582.)

Petitioner's assertion that the preliminary hearing judge directed Lopez to answer questions in a particular way does not indicate a violation of Petitioner's Confrontation Clause rights. Nothing in the clarifying questions asked by the judge deprived defense counsel of his opportunity to cross-examine Lopez effectively.

During the preliminary hearing, defense counsel was able to question Lopez regarding the phone calls he was permitted to make while the robbery was taking place, to probe inconsistencies in his testimony relating to whether and when Lopez was physically restrained, and to elicit testimony on Lopez's prior drug-related conviction. (1 CT 22-30.)

Petitioner also argues that he was denied the opportunity to cross-examine Lopez at trial about his admission that he was a drug dealer, an admission made at a pre-trial hearing while he was invoking his Fifth Amendment rights. (See 2 RT 110.) Petitioner, however, was given the opportunity to thoroughly cross-examine Lopez about his profession during the earlier preliminary hearing. The fact that defense counsel chose not to do so does not violate Petitioner's Confrontation Clause rights. See Delaware v. Fensterer, 474 U.S. 15, 22 (1985) (per curium) (observing that "the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to … expose [testimonial] infirmities through cross-examination").

In any event, any inability to cross-examine Lopez about whether or not he was a drug dealer could not have had a substantial or injurious effect on the jury's verdict. Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); Woods v. Sinclair, 655 F.3d 886, 901 (9th Cir. 2011) (violation of the Confrontation Clause is subject to harmless-error analysis under Brecht); Jackson v. Brown, 513 F.3d 1057, 1084-85 (9th Cir. 2008). At trial, both the prosecution and Petitioner agreed that Lopez was a drug dealer. (See 3 RT 254, 262.) Any testimony elicited from Lopez about his profession would have been cumulative and likely would not have influenced the jury's result. Clark v. Brown, 450 F.3d 898, 916 (9th Cir. 2006) (a petitioner must show there is "a reasonable probability" that the jury would have reached a different result but for the alleged error).

Petitioner is not entitled to relief on Ground Three.

**C.      Ground Four: Admission of Co-Conspirator's Allegedly Testimonial Hearsay.**

Petitioner claims that he was denied his Sixth and Fourteenth Amendment rights to confrontation when the trial court allowed into evidence hearsay statements of Petitioner's co-conspirator, Haliburton, referenced by Lopez's preliminary hearing testimony. (FAP at 8, 17, 28.) The Court disagrees.

**1.      Relevant Proceedings.**

Lopez's preliminary hearing testimony was read to the jury at trial. (3 RT 265-99.) In that testimony, Lopez recounted two statements Haliburton allegedly made at the time of the crime. According to Lopez, Haliburton said, "Oh, you kill him." (3 RT 278-79.) Later, Haliburton asked Lopez for his keys. (3 RT 283-84.)

The Superior Court rejected this claim in its 2014 decision, stating, "It is a well-recognized exception to the hearsay rule that statements in furtherance of the conspiracy by a co-conspirator are admissible." (LD 4 at 26.)

**2.      Applicable Law.**

The Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had … a prior opportunity for cross-examination." <u>Crawford</u>, 541 U.S. at 53-54. <u>Crawford</u> declined to define the meaning of "testimonial." <u>Id.</u> at 68 ("We leave for another day any effort to spell out a comprehensive definition of 'testimonial.'"). However, subsequent Supreme Court cases suggest that a statement is "testimonial" if its declarant knew, or should have known, that its primary utility was to provide evidence of the defendant's unlawful conduct for use in his prosecution or a criminal investigation into past events. <u>See</u> <u>Williams v. Illinois</u>, __ U.S. __, 132 S. Ct. 2221, 2242 (2012) ("The abuses that the Court has identified as prompting the adopting of the Confrontation Clause shared the following two characteristics: (a) they involved out-of-court statements having the primary purpose of accusing a targeted individual of engaging in criminal conduct

19

1    and (b) they involved formalized statements such as affidavits, depositions, prior

2    testimony, or confessions."); Melendez-Diaz v. Massachusetts, 557 U.S. 305, 310-

3    11 (2009) (opinion that a statement is "testimonial" if it was made for an

4    "evidentiary purpose" and "under circumstances which would lead an objective

5    witness reasonably to believe that the statement would be available for use at a later

6    trial") (citation and internal quotation marks omitted). As the Ninth Circuit has

7    observed, Crawford's discussion of what may constitute a testimonial statement

8    was premised on the use of statements "made to a government officer with an eye

9    toward trial, the primary abuse at which the Confrontation Clause was directed."

10   Jensen v. Pliler, 439 F.3d 1086, 1089 (9th Cir. 2006).

11          Crawford made clear that the Confrontation Clause was concerned with

12   testimony, something that is typically a solemn declaration or affirmation made to

13   establish or prove some fact. Crawford noted that an accuser who provides a formal

14   statement to law enforcement officers provides testimony that is distinguishable

15   from a casual remark between acquaintances. Delgadillo v. Woodford, 527 F.3d

16   919, 927 (9th Cir. 2008) (holding that the state court's finding that a victim's

17   statements to her coworkers were not "testimonial" for Confrontation Clause

18   purposes was not contrary to or an unreasonable application of Crawford). In

19   addition, Supreme Court precedent still does not define "testimonial" and

20   "nontestimonial" statements with precision. See Flournot v. Small, 681 F.3d 1000,

21   1004-1005 (9th Cir. 2012) (stating that Crawford and its progeny fail to "delineate

22   precisely what statements qualify as 'testimonial'"). In the absence of a clearly

23   established Supreme Court definition of "testimonial," a federal habeas court must

24   give state courts "leeway" in their case-by-case applications of Crawford and

25   subsequent decisions. See Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)

26   ("The more general the rule, the more leeway state courts have in reaching

27   outcomes in case-by-case determinations.").

28

### 3. **Analysis.**

Petitioner argues that his inability to cross-examine Haliburton regarding his "testimonial" statements violated his right to confront witnesses. (FAP at 28.) Plaintiff argues that he was never charged with conspiracy, and therefore the Superior Court's denial of this ground was unreasonable. (Traverse at 7.)

The Superior Court's determination that California Evidence Code section 1223[11]—the state law hearsay exception for statements of co-conspirators—applied to Haliburton's statements is unreviewable by this Court. "A federal court … cannot review questions of state evidence law." Henry v. Kernan, 197 F.3d 1021, 1031 (9th Cir. 1991); see also Estelle v. McQuire, 502 U.S. 62, 63 (1991). Thus, the state court's conclusion that the challenged statements met the requirements of California Evidence Code section 1223 is binding on this Court in this federal habeas proceeding. Whether the evidence adduced satisfied a state law hearsay exception is a question on which this Court must defer to the California courts. See McMillan v. Biter, 2014 WL 3557279, at *14 (C.D. Cal. July 18, 2014).

A statement could be admissible under the California Evidence Code yet still violate a defendant's federal Confrontation Clause rights. This is not, however, the case here. As Crawford recognized, "statements in furtherance of a conspiracy" are a classic example of nontestimonial statements that do not implicate the

---

[11] California Evidence Code section 1223 provides as follows:

> Evidence of a statement offered against a party is not made inadmissible by the hearsay rule if: (a) The statement was made by the declarant while participating in a conspiracy to commit a crime or civil wrong and in furtherance of the objective of that conspiracy; (b) The statement was made prior to or during the time that the party was participating in that conspiracy; and (c) The evidence is offered either after admission of evidence sufficient to sustain a finding of the facts specified in subdivisions (a) and (b) or, in the court's discretion as to the order of proof, subject to the admission of such evidence.

1  Confrontation Clause. <u>Crawford</u>, 541 U.S. at 56; <u>see also</u> <u>United States v. Grasso</u>,
2  724 F.3d 1077, 1085 n.9 (9th Cir. 2013) ("[a]lthough the Sixth Amendment limits
3  the admissibility of testimonial evidence, … co-conspirator statements in
4  furtherance of a conspiracy are not testimonial") (citations omitted); <u>United States</u>
5  <u>v. Allen</u>, 425 F.3d 1231, 1235 (9th Cir. 2005) ("[C]o-conspirator statements are not
6  testimonial and therefore beyond the compass of <u>Crawford</u>'s holding.").

7       Consistent with these authorities, admitting Haliburton's statements through
8  Lopez was not a violation of the Confrontation Clause, because the statements were
9  not testimonial. It cannot reasonably be argued that statements made to an
10  accomplice or a victim during the commission of a robbery are testimonial. The
11  statements were not formal ones made to law enforcement officers, and Haliburton
12  assuredly did not intend for those statements to be used in court. <u>See</u> <u>Crawford</u>, 541
13  U.S. at 51; <u>Delgadillo</u>, 527 F.3d at 927. Accordingly, Haliburton's statements fell
14  outside the ambit of the Confrontation Clause and were admissible without any
15  constitutional violation.

16       To the extent that Petitioner's argument can be construed as raising a claim
17  under <u>Bruton v. United States</u>, 391 U.S. 123 (1968), Ground Four nonetheless fails.
18  Under <u>Bruton</u>, the Confrontation Clause may be violated when statements made by
19  a nontestifying co-defendant are proffered as evidence if such statements directly
20  implicate another defendant who has not had an opportunity to cross-examine the
21  co-defendant regarding the statements. <u>Id.</u> at 126-27. <u>Bruton</u> applies only where co-
22  defendants are tried jointly. <u>United States v. Mitchell</u>, 502 F.3d 931, 965 (9th Cir.
23  2007). In the robbery case, Petitioner and Haliburton were not jointly tried, and
24  none of the statements made by Haliburton implicated Petitioner. Additionally, the
25  great weight of federal authority indicates that nontestimonial statements do not
26  implicate <u>Bruton</u>. <u>See</u> <u>Hundley v. Montgomery</u>, 2014 WL 1839116, at *11-12 (E.D.
27  Cal. May 8, 2014) (collecting cases). Therefore, <u>Bruton</u> has no application in this
28  case.

1    Petitioner is not entitled to relief on Ground Four.

2    **D.    <u>Grounds Five and Six: Admission of Lopez's Wiretapped Statements.</u>**

3    Petitioner contends that he was denied his Sixth and Fourteenth Amendment

4    rights to confrontation and his right to a fair trial when the trial court allowed into

5    evidence testimonial hearsay statements of the victim captured on wiretaps. (FAP at

6    8-9, 17, 29-35.) The Court disagrees.

7    **1.    Relevant Proceedings.**

8    At trial, the prosecution sought to admit four statements by Lopez from

9    wiretapped telephone conversations, arguing that they were admissible under

10   California Evidence Code section 1251[12] as prior hearsay statements of an

11   unavailable witness discussing a prior physical condition. The trial court ruled that

12   two of the four statements were admissible, finding that Lopez was unavailable and

13   that the statements regarding his physical condition tended to prove that force was

14   used to take his property, which was at issue in the case. (3 RT 309-12.) The two

15   statements were: (1) "No cuz, they wouldn't … find the shit today. They fucked me

16   up. The thing is, I was gushing blood almost like—it's gonna pour—blood was

17   pouring like when a bitch is having her period, fool." and (2) "No on m—on my

18   head, on the nape of my neck. They knocked me out and I got—I got rubber legs."

19   (1 CT 201, 208; 3 RT 310-12.)

20

21   _____

     [12] California Evidence Code section 1251 provides as follows:

22

23   … [E]vidence of a statement of the declarant's state of mind,
     emotion, or physical sensation (including a statement of intent, plan,

24   motive, design, mental feeling, pain, or bodily health) at a time prior to
     the statement is not made inadmissible by the hearsay rule if (a) The

25   declarant is unavailable as a witness; and (b) The   evidence is offered
     to prove such prior state of mind, emotion, or physical sensation when

26   it is itself an issue in the action and the evidence is not offered to prove
     any fact other than such state of mind, emotion, or physical sensation.

27

28

Several days later, defense counsel filed a motion to exclude the statements arguing that they did not fall within the exception set forth in California Evidence Code section 1251. (1 CT 117-25.) The trial court disagreed and confirmed its earlier ruling. (3 RT 361-66.)

Blanca Lopez, a linguist for the Drug Enforcement Agency, testified on behalf of the prosecution. (3 RT 370.) She explained that she listened to hundreds of wiretapped conversations captured from Lopez's telephone in association with a narcotics investigation. (3 RT 371, 377.) The linguist listened to a conversation that occurred on October 17, 2009, at 3:27 p.m., the day after the crime, where Lopez and an unidentified male discussed events that had occurred the day before in Spanish. (3 RT 371-71.) The two recorded wiretapped statements deemed admissible by the trial court were played for the jury. The jury was also given a transcript with an English translation. The linguist confirmed that the statements were made by Lopez because she recognized his voice, and that the English translation was correct. (3 RT 374-76.) The linguist stated that the unidentified male to whom Lopez was talking was Lopez's friend and not a member of law enforcement. (3 RT 376-77.)

**2. Petitioner's Confrontation Clause Claim.**

Petitioner's Confrontation Clause claim was silently rejected by the California Court of Appeal on habeas corpus review. (LD 9; see supra Section IV.) Where a state court adjudication is unexplained, the question under § 2254(d) is "whether there is any reasonable argument supporting the state court's denial of relief." Richter, 562 U.S. at 98, 105. The California Court of Appeal could have reasonably rejected this claim by finding that Lopez's statements in the wiretapped conversations were not testimonial.

The statements challenged by Petitioner were made to Lopez's friend and surreptitiously recorded via a wiretap. The linguist testified that Lopez was not talking to a member of law enforcement (3 RT 376-77), and Petitioner does not

challenge that fact. There is nothing about Lopez's statements that indicates they were made under circumstances which would lead an objective witness reasonably to believe that the statements would be available for use at a later trial. See Crawford, 541 U.S. at 51-52; see also Delgadillo, 527 F.3d at 927 (victim's statements to her co-workers that petitioner had abused her were non-testimonial, but similar statements to the police were testimonial); see, e.g., United States v. Hendricks, 395 F.3d 173, 181 (3d Cir. 2005) (surreptitiously monitored private conversations and wiretapped statements were nontestimonial because, among other reasons, "the speakers certainly did not make the statements thinking that they would be available for use at a later trial") (citations omitted). Lopez's private communications with a friend do not fall within the category of statements the Supreme Court has indicated are testimonial.

In any event, any error in the admission of the two statements was harmless. When a state court summarily denies a claim, one possible basis for the denial is a finding that the error was harmless beyond a reasonable doubt under Chapman v. California, 386 U.S. 18, 87 (1967). See Richter, 562 U.S. at 102 ("Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fair-minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court."). Relief is unavailable unless a determination that any error was harmless under Chapman would necessarily be unreasonable under § 2254(d). Davis v. Ayala, __ U.S. __, 135 S. Ct. 2187, 2199 (2015) ("When a Chapman decision is reviewed under AEDPA, 'a federal court may not award habeas relief under § 2254 unless the harmlessness determination itself was unreasonable.'") (quoting Fry v. Pliler, 551 U.S. 112, 119 (2007)).

Here, there was other evidence indicating that Lopez's property was forcibly taken from him. Lopez's preliminary hearing testimony detailed that Petitioner and

Haliburton had guns pointed at his head as they insisted that Lopez hand over money. (3 RT 275.) Lopez stated that Petitioner hit him twice on the head causing him to bleed. Lopez described the blow as so forceful that he fell to the floor. Lopez testified that while he was on the floor, Petitioner kicked him. (3 RT 276-79.)

Petitioner argues that the admission of the wiretapped statements prejudiced him because of the reliance the prosecution placed on them when discussing Lopez's credibility. (FAP at 30-31.)[13] Even if the wiretapped statements bolstered the credibility of Lopez's preliminary hearing testimony, other reliable, corroborating evidence existed to support a finding that Lopez was injured during the crime. Officers responding to the scene stated that when they saw Lopez at the scene, Lopez had blood on his face and head, corroborating his statements that he was beaten. (3 RT at 322, 489.) Because the wiretapped statements were cumulative of other evidence introduced at trial, any error regarding the admission of Lopez's statements that he was gushing blood and had been hit on the nape of the neck so hard that he got 'rubber legs' could reasonably have been found harmless.

**3. Petitioner's Fair Trial Claim.**

Petitioner argues that he was denied his Sixth and Fourteenth Amendment right to a fair trial when the trial court admitted the same wiretapped statements by Lopez. (FAP at 9, 17, 31-35.) Specifically, he claims that the trial court erroneously admitted the statements under California Evidence Code section 1251, which denied him due process. (FAP at 31-35.)

---

[13] During his closing argument, the prosecutor used the wiretapped statements to bolster the reliability of Lopez's preliminary testimony hearing, arguing as follows: "The wiretap is a window to show you the truth in this case." (4 RT 562); "We'll talk about the wiretap in a minute, why that's so reliable." (4RT 561); "He was hit just like he said in the wiretap, just like he testified to at preliminary hearing." (4 RT 562-63); and "So you have the wiretap that puts an end, a complete end to the defense's theory of the case." (4 RT 605.)

As a preliminary matter, to the extent Petitioner contends that the admission of the challenged evidence violated California evidence law, this claim fails to state a cognizable federal habeas claim. See Estelle, 502 U.S. at 67-68; Rhoades v. Henry, 638 F.3d 1027, 1034 n. 5 (9th Cir. 2010) ("[E]videntiary rulings based on state law cannot form an independent basis for habeas relief."). The Superior Court rejected this claim, as follows: "Pursuant to Evidence Rule 1251 the statements were correctly admitted since the Defendant[14] was unavailable (an issue already covered in [Ground] 1 and 5)." (LD 4 At 27.) This Court is bound by the Superior Court's conclusion that the trial court did not err, as a matter of California law, in ruling that the statements were admissible under California Evidence Code section 1251.

Generally, a state court's decision to admit specific evidence is not subject to federal habeas review unless the evidentiary ruling violates federal law or deprives the defendant of a fundamentally fair trial. Estelle, 502 U.S. at 75 (finding federal habeas relief inappropriate where admission of evidence was not so unfair as to result in denial of due process); Dowling v. United States, 493 U.S. 342, 352 (1990) (analyzing "whether the introduction of this type of evidence is so extremely unfair that its admission violates fundamental conceptions of justice") (internal quotation marks omitted). To the extent Petitioner argues that the admission of the hearsay statements was prejudicial and therefore presents a federal constitutional issue, the Court is not persuaded. As the Ninth Circuit noted in Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009), citing Carey v. Musladin, 549 U.S. 70, 77 (2006), the Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process. The Court has not yet made a clear ruling that the admission of irrelevant or overtly prejudicial evidence constitutes a due process

---

[14] The Court assumes that the Superior Court made a typographical error, and meant to refer to Lopez as unavailable, not the defendant.

1    violation sufficient to warrant issuance of the writ.

2           The Ninth Circuit has noted that a habeas petitioner bears a "heavy burden"

3    in demonstrating a due process violation on the basis of a state court's evidentiary

4    decision, as he must show that there were "no permissible inferences" the jury

5    could draw from the challenged evidence. Boyde v. Brown, 404 F.3d 1159, 1162

6    (9th Cir. 2005) (internal quotation marks omitted); see also McKinney v. Rees, 993

7    F.2d 1378, 1384 (9th Cir 2009).

8           Here, there were permissible, non-prejudicial inferences that could be drawn

9    from the wiretap evidence, so that its admission cannot be said to have rendered

10   Petitioner's trial so "fundamentally unfair" as to violate due process. Holley, 568

11   F.3d at 1101. As the trial court noted, the statements were relevant to show that

12   Lopez had been injured during his altercation with Petitioner. The jury could have

13   reasonably inferred from Lopez's statements that he was beaten and injured during

14   the robbery, leading to the conclusion that Lopez's property was taken by force or

15   fear. (See 3 RT 362-66.)

16          **4.  Any Constitutional Error was Harmless.**

17          Moreover, to the extent that the trial court may have committed error with

18   regard to Petitioner's fair trial and confrontation claims, any alleged error did not

19   have a substantial and injurious effect or influence in determining the jury's verdict.

20   See Brecht v. Abrahamson, 507 U.S. at 637-38; see also Pliler, 551 U.S. at 121-22

21   (even if the state court does not have occasion to apply the test for assessing

22   prejudice applicable under federal law, the Brecht standard applies uniformly in all

23   federal habeas corpus cases under § 2254); Larson v. Palmateer, 515 F.3d 1057,

24   1064 (9th Cir. 2008) (review for harmless error under Brecht is "more forgiving" to

25   state court errors than the harmless error standard the Supreme Court applies on its

26   direct review of state court convictions); Clark, 450 F.3d at 916 (reviewing under

27   Brecht whether there was "a reasonable probability" that the jury would have

28   reached a different result but for the alleged error).

Here, a review of the record demonstrates that any due process/fair trial or confrontation error was harmless. As noted above, see supra Section V.D.2., the evidence indicating that Lopez's property was forcibly taken was substantial without the wiretapped statements at issue. Even if the contested statements had been excluded, the jury would still have learned that Lopez was injured in the course of the robbery. Accordingly, any constitutional error was harmless.

Petitioner is not entitled to relief on Ground Five and Six.

## E.   Ground Seven: Jury Instruction on Lesser Included Offenses.

Petitioner argues that his due process rights were violated when the trial court erred by failing to instruct the jury on the lesser included offenses of attempted first degree robbery and attempted first degree burglary. (FAP at 9, 17, 35-37.) Petitioner claims there was substantial evidence supporting such instructions. (FAP at 36.) The Court disagrees.

This contention does not raise a federally recognized claim. The Supreme Court has never required a trial court to instruct the jury on lesser included offenses in non-capital cases. Beck v. Alabama, 447 U.S. 625, 638 n.14 (1980) (expressly declining to rule whether the Constitution requires giving instruction on lesser included offenses in non-capital cases); see also Solis v. Garcia, 219 F.3d 922, 929 (9th Cir. 2000) (per curiam) (failure of state court to instruct on lesser included offense does not present a federal constitutional question cognizable on federal habeas corpus proceeding); Powell v. Hatcher, 407 F. App'x. 226, 227 (9th Cir. 2011), cert denied, 563 U.S. 998 (2011) (same).

The Ninth Circuit has observed that a defendant's right to adequate jury instructions on his theory of the case might, in some cases, constitute an exception to the general rule that the failure of a state trial court to instruct on lesser offenses in a non-capital case does not present a federal constitutional claim. See Solis, 219 F.3d at 929; Bashor v. Risley, 730 F.2d 1228, 1240 (9th Cir. 1984). This exception only applies where the lesser included offense was the theory of defense and the

1   defendant presented substantial evidence to support that defense. <u>Clark</u>, 450 F.3d at

2   904-05 (stating that failure to instruct on the defense theory of the case is reversible

3   error if the theory is legally sound and evidence in the case makes it applicable).

4        Here, the Court agrees with the Superior Court's finding that there was not

5   substantial evidence to warrant an instruction on lesser included offenses. (<u>See</u> LD

6   4 at 27.) There was no evidence introduced at trial indicating that robbery or

7   burglary was attempted but not consummated. In fact, such evidence would have

8   directly contradicted Petitioner's defense at trial, which was that Lopez was in total

9   control of the situation inside the house and that Petitioner neither attempted to, nor

10  in fact did, rob or burglarize Lopez. (<u>See</u> 4 RT 579-82.) If the jury believed

11  Petitioner's version of events, he would not have been guilty of any crime,

12  including attempted robbery and attempted burglary. <u>See</u>, <u>e.g.</u>, <u>Gonzales v. Gipson</u>,

13  2013 WL 378963, at *7 (noting that if the jury believed the petitioner's version of

14  events he would have been acquitted in finding the failure to instruct on a lesser

15  included offense harmless).

16       In any event, Petitioner has not shown that the failure to instruct on lesser

17  included offenses had a substantial and injurious effect on the jury's verdict.

18  <u>Brecht</u>, 507 U.S. at 637-38. In convicting Petitioner of robbery and burglary, the

19  jury necessarily found that Petitioner completed any attempted robbery and

20  burglary. Additionally, there was substantial evidence that Petitioner completed the

21  robbery and burglary. Lopez's testimony detailed that Petitioner and Haliburton

22  broke down his door, beat him, and held him at gunpoint while they took jewelry

23  and money. (1 CT 15-16.) Police recovered checks made out to Lopez, pieces of

24  jewelry belonging to Lopez, and approximately $1,000 dollars in cash from

25  Petitioner upon apprehending him while he was attempting to flee. (3 RT 438-42.)

26  Given Lopez's testimony and the fact that Petitioner was arrested with Lopez's

27  property in his possession, he cannot show that there is a reasonable probability that

28  the jury would have reached a different conclusion even if it had been instructed on

1   attempted robbery and/or attempted burglary. Accordingly, any error in failing to
2   instruct on attempted robbery and attempted burglary was harmless.

3        Petitioner is not entitled to relief on Ground Seven.

4   **F.    Ground Eight: Sufficiency of the Evidence.**

5        Petitioner contends that his due process rights were violated when the
6   prosecutor failed to prove beyond a reasonable doubt the special allegation that a
7   principal was armed during the commission of the robbery and burglary. (FAP at 9,
8   17, 37-38.) The Superior Court rejected this claim, stating that a jury found the
9   allegation to be true. (LD 4 at 27; 1 CT 133, 135.)

10       **1.    Applicable Law.**

11       The Due Process Clause of the Fourteenth Amendment protects a
12   criminal defendant from conviction "except upon proof beyond a reasonable
13   doubt of every fact necessary to constitute the crime with which he is charged."
14   In re Winship, 397 U.S. 358, 364 (1970); accord Juan H. v Allen, 408 F.3d
15   1262, 1274 (2005). Thus, a state prisoner who alleges that the evidence
16   introduced at trial was insufficient to support the jury's findings states a
17   cognizable federal habeas claim. Herrera v. Collins, 506 U.S. 390, 401-02
18   (1993). The prisoner, however, faces a "heavy burden" to prevail on such a
19   claim. Juan H., 408 F.3d at 1274, 1275 n.13. Evidence is sufficient to support a
20   conviction if, viewing all the evidence in the light most favorable to the
21   prosecution, "any rational trier of fact could have found the essential elements
22   of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307,
23   319 (1979).

24       When determining the sufficiency of the evidence, a reviewing court
25   makes no determination of the facts in the ordinary sense of resolving factual
26   disputes. Sarausad v. Porter, 479 F.3d 671, 678 (9th Cir.), vacated in part, 503
27   F.3d 822 (9th Cir. 2007), rev'd on other grounds, 555 U.S. 179 (2009). Rather,
28   the reviewing court "must respect the province of the jury to determine the

credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts by assuming that the jury resolved all conflicts in a manner that supports the verdict." Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995); see also Jackson, 443 U.S. at 319, 324, 326.

While "mere suspicion or speculation cannot be the basis for the creation of logical inferences," Maass, 45 F.3d at 1358 (citation and internal quotation marks omitted), "[c]ircumstantial evidence can be used to prove any fact, including facts from which another fact is to be inferred, and is not to be distinguished from testimonial evidence insofar as the jury's fact-finding function is concerned." United States v. Stauffer, 922 F.2d 508, 514 (9th Cir. 1990) (citation omitted). Furthermore, "to establish sufficient evidence, the prosecution need not affirmatively rule out every hypothesis except that of guilt." Schell v. Witek, 218 F.3d 1017, 1023 (9th Cir. 2000) (en banc) (citation and internal quotation marks omitted).

In post-AEDPA cases, where, as here, a state court has issued a reasoned decision rejecting a claim of insufficient evidence under a standard that is not "contrary to" Jackson, a reviewing federal court applies an additional layer of deference. Juan H., 408 F.3d at 1274. "[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable." Cavazos v. Smith, __ U.S. __, 132 S. Ct. 2, 4 (2011) (per curiam) (citation and internal quotation marks omitted); see also Juan H., 408 F.3d at 1275 n.13. This "double dose of deference … can rarely be surmounted." Boyer v. Belleque, 659 F.3d 957, 964 (9th Cir. 2011); see also Coleman v. Johnson, __ U.S. __, 132 S. Ct. 2060, 2062 (2012) (per curiam) ("We have made clear that Jackson claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference").

1    Thus, a state court's resolution of an insufficiency of the evidence claim is

2    evaluated under 28 U.S.C. § 2254(d)(1), not § 2254(d)(2). Emery v. Clark, 643

3    F.3d 1210, 1213-14 (9th Cir. 2011) ("When we undertake collateral review of a

4    state court decision rejecting a claim of insufficiency of the evidence pursuant

5    to 28 U.S.C. § 2254(d)(1) … we ask only whether the state court's decision was

6    contrary to or reflected an unreasonable application of Jackson to the facts of a

7    particular case"); Long v. Johnson, 736 F.3d 891, 896 (9th Cir. 2013) ("The

8    pivotal question, then, is whether the California Court of Appeal …

9    unreasonably applied Jackson in affirming Petitioner's conviction for second-

10   degree murder"); Boyer, 659 F.3d at 965 ("[T]he state court's application of the

11   Jackson standard must be 'objectively unreasonable' to warrant habeas relief

12   for a state court prisoner"); Juan H., 408 F.3d at 1275 ("[W]e must ask whether

13   the decision of the California Court of Appeal reflected an 'unreasonable

14   application of' Jackson and Winship to the facts of this case") (citing 28 U.S.C.

15   § 2254(d)(1)).

16       **2.    Analysis.**

17       The Superior Court did not unreasonably apply clearly established federal

18   law, because there was ample evidence to support the jury's finding that Haliburton

19   was armed during the offenses. The jury was instructed that a principal is armed

20   with a firearm when that person carries a firearm for use in either offense or defense

21   in connection with the crimes charged and knows that he is carrying the firearm. (1

22   CT 162-63.) Here, Lopez testified that he saw Haliburton carrying a gun in his

23   waistband before Petitioner and Haliburton entered his house. (1 CT 7.) Lopez

24   stated that he was held at gunpoint while Petitioner and Haliburton stole his

25   property. (3 RT 270, 273-75, 279-81; 1 CT 11-12, 15-16.) Officer Ramirez testified

26   that when he arrived on the scene, he saw a Beretta handgun fall from Haliburton's

27   waistband as Haliburton attempted to climb over a brick wall in the back of Lopez's

28   house. (3 RT 318-20, 322-25.)

Based on this evidence, a jury could reasonably conclude that Haliburton was armed with a firearm during the commission of the crimes. Accordingly, the Superior Court did not unreasonably reject Petitioner's sufficiency of the evidence claim.

**G.    Ground Nine: Right to a Jury Trial.**

Petitioner contends that his Sixth and Fourteenth Amendment right to a jury trial was violated when the "principal armed with a firearm allegation" was not decided by a jury, in violation of <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000). (FAP at 9-10, 17-18, 39.) The Superior Court rejected this claim by finding that a jury did in fact find that the allegation was true. (LD 4 at 27.) This claim was reasonably rejected because the firearm allegation was submitted to the jury and the jury found the allegation to be true. (1 CT 133-35.) Petitioner's erroneous assertion that the jury did not find true the firearm allegation is meritless and does not warrant relief.

**H.    Ground Ten: Sentencing Error.**

Petitioner argues that he was denied his Fifth, Sixth, and Eighth Amendment rights when the government breached his plea agreement in Case No. BA374493 ("the cocaine case"), and that the trial court erred in resentencing him on that case during sentencing proceedings for the robbery case. (FAP at 10, 18, 40-41.) The Court disagrees.

**1.    Relevant Proceedings.**

Prior to going to trial in case number BA363506 ("the robbery case"), Petitioner pled no contest to possession of cocaine for sale in case number BAS374493 ("the cocaine case"), and he was sentenced to the low term of three years, doubled under California's Three Strikes law (Cal. Penal Code §§ 667(b)-(i), 1170.12(a)-(d)) for a total of six years. When he was sentenced in the robbery case, the trial court resentenced Petitioner in the drug case, making it subordinate to the robbery and burglary sentence, pursuant to California Penal Code section 1170.1(a).

The trial court selected the middle term of four years, doubled to eight years, and imposed one-third of that term, or two years and eight months, to run consecutively to the sentence imposed in the robbery case. Including the consecutive sentence in the cocaine case and all enhancements in the robbery case, Petitioner was sentenced to a term of twenty years and eight months. (1 CT 180-181; 4 RT 640, 645-46.)

Petitioner argues that the trial court erred in resentencing him in the cocaine case. The Superior Court denied this claim, stating, "the court is obligated to impose 1/3 of the midterm when another case is sentenced in conjunction with another case." (LD 4 at 27.)

**2. Petitioner's Jurisdictional Claim.**

Petitioner argues that the trial judge in the robbery case lacked jurisdiction to resentence him in the cocaine case. Petitioner contends that the trial court should have made the robbery case the subordinate case and the cocaine case the primary case, because the cocaine case was sentenced first. (Traverse at 10.) Had that occurred, Petitioner argues that the judge would have taken one-third of the doubled middle term of his robbery sentence and added it to the six year sentence originally imposed in the cocaine case. Using that calculation, Petitioner argues that he should be facing a sentence approximately seven to nine years shorter than the one imposed.[15] He also claims that treating his cocaine conviction as the subordinate case deprived him of presentence jail credits.

Petitioner's contention is essentially that the trial court did not apply state sentencing law correctly. Such a claim generally does not merit federal intrusion. Estelle, 502 U.S. at 63; see also Ramsey v. Perez, 2014 WL 2511093, at *5 (C.D.

---

[15] Petitioner uses both numbers at various points in the documents he has filed with the Court. (Traverse at 10 [claiming that proper sentencing would have given him a sentence approximately seven years shorter]); (Dkt. 57 at 2 [claiming total sentence should have been eleven years and eight months, nine years shorter than his current sentence]).

1    Cal. Jun. 2, 2014) (misapplication of state sentencing law is not cognizable on
2    federal habeas review). In limited circumstances, however, the misapplication of
3    state sentencing law may violate a defendant's federal right to due process. <u>See</u>
4    <u>Richmond v. Lewis</u>, 506 U.S. 40, 50 (1992). In such cases, "the federal,
5    constitutional question is whether [the error] is so arbitrary or capricious as to
6    constitute an independent due process" violation. <u>Id.</u> (citation and internal quotation
7    marks omitted); <u>see also</u> <u>Christian v. Rhode</u>, 41 F.3d 461, 469 (9th Cir. 1994)
8    ("absent a showing of fundamental unfairness, a state court's misapplication of its
9    own sentencing laws does not justify federal habeas relief."). Accordingly, the
10   Court evaluates Petitioner's claim to determine if the trial court misapplied
11   California sentencing law in an arbitrary or fundamentally unfair manner when
12   imposing Petitioner's sentence.

13     California's sentencing law provides as follows:

14     [W]hen any person is convicted of two or more felonies, whether in
15     the same proceeding or court or in different proceedings or courts, and
16     whether by judgment rendered by the same or by a different court, and
17     a consecutive term of imprisonment is imposed … the aggregate term
18     of imprisonment for all these convictions shall be the sum of the
19     principal term, the subordinate term, and any additional term imposed
20     for applicable enhancements for prior convictions … *The principal*
21     *term shall consist of the greatest term of imprisonment imposed by the*
22     *court for any of the crimes*, including any term imposed by applicable
23     specific enhancements. The subordinate term for each consecutive
24     offense shall consist of one-third of the middle term of imprisonment
25     prescribed for each other felony conviction for which a consecutive
26     term of imprisonment is imposed … .

27   Penal Code § 1170.1(a) (emphasis added). When calculating a sentence under this
28   scheme, the trial court must make the highest imposed sentence the primary

1    sentence and make all other convictions subordinate. Petitioner simply misstates

2    California law in contending that the trial court should have determined his primary

3    and subordinate crimes based on which one was sentenced first. Here, the

4    sentencing court did precisely what California law mandated by selecting

5    Petitioner's robbery case as the primary case and then calculating the cocaine

6    sentence as subordinate and consecutive to the robbery sentence. The trial court

7    properly imposed the sentencing scheme required by Section 1170.1(a) and, in

8    doing so, did not violate Petitioner's due process rights. See Richmond, 506 U.S. at

9    50; Christian, 41 F.3d at 469.

10          **3.  Petitioner's Plea Agreement Claim.**

11          Fundamental fairness of due process requires that promises made during plea

12   bargaining be respected. See Johnson v. Lumpkin, 769 F.2d 630, 633 (9th Cir.

13   1985); see also Santobello v. New York, 404 U.S. 257, 262 (1971). Plea

14   agreements are contractual in nature and subject to contract law standards of

15   interpretation. In re Ellis, 356 F.3d 1198, 1207 (9th Cir. 2004) (citing Fed. R. Crim.

16   P 11(c)). In determining whether a plea agreement has been broken, courts look to

17   what was reasonably understood by the parties to be the terms of the agreement.

18   See Brown v. Poole, 337 F.3d 1155, 1159-60 (9th Cir. 2003).

19          Petitioner argues that his plea agreement in the cocaine case was breached by

20   the prosecution's motion to resentence that case to run consecutively with the

21   robbery case. Records indicate that the cocaine case was sentenced pursuant to a

22   "case settlement agreement" that recommended the lowest three year term, doubled

23   to six years pursuant to the Three Strikes law. (Dkt. 66 at 20, April 15, 2011

24   Sentencing Transcript for the cocaine case.) Minute Orders from sentencing in the

25   cocaine case show that the remaining counts were dismissed pursuant to plea

26   negotiations. (Dkt. 58 at 15, Probation and Sentence Hearing Minutes for the

27   cocaine case.) Other than these fleeting references to the plea agreement in the

28   cocaine case, the Court has received no evidence providing the terms of the plea

agreement, and specifically none regarding whether or not any terms would have prevented the prosecutor in another case from calling for a resentencing in the cocaine case.[16] If anything, the record suggests that the plea agreement in the cocaine case did not reference sentencing in the robbery case. (See Dkt. 66 at 6-23.) Rather, the sentencing hearing for the cocaine case indicates that no agreement was reached to enter a global plea deal for the two cases, and the sentencing court specifically noted that there was no reason why sentencing in the cocaine case would affect, or be affected by, the robbery case. (Dkt. 66 at 9-10.)

Additionally, Petitioner has not shown that the alleged breach of any plea agreement had a substantial and injurious effect on him. See Runquist v. Grounds, 2011 WL 350292, at *9 (E.D. Cal. Feb. 2, 2011) (applying Brecht to the petitioner's claim that the state breached the plea agreement). Regardless of the terms of any plea agreement in the cocaine case, the net result is that Petitioner received a lesser prison sentence as a result of the government conduct he challenges in Ground Ten. Petitioner argues that this is a misconstruction of what actually occurred; he contends that he received a significantly higher sentence because the trial court in the robbery case erroneously resentenced the cocaine case as subordinate to the robbery case.

Petitioner misunderstands the formulation of his sentence. The sentencing judge decreased Petitioner's sentence in the cocaine case from six years to two years and eight months. Per California Penal Code 1170.1(a), the court was required to make the cocaine case subordinate to the robbery case (and not the other way around). No plea agreement could have "contracted around" this requirement of California law. Thus, resentencing Petitioner in the cocaine case reduced his sentence for that offense, and a decreased sentence is clearly harmless to Petitioner.

---

[16] Respondent was unable to obtain any record of a plea agreement in the cocaine case. (See Dkt. 63, Notic e of Supplemental Lodging 2 n.2.)

1    Petitioner is not entitled to relief on Ground Ten.

2    **I.    Grounds Eleven and Twelve: Ineffective Assistance of Counsel.**

3    In Ground Eleven, Petitioner argues that he was denied his Sixth and
4    Fourteenth Amendment right to the effective assistance of counsel when his trial
5    counsel failed to object to the aforementioned errors in Grounds One through Ten.
6    (FAP at 10, 18, 41-42.) In Ground Twelve, Petitioner argues that he was denied his
7    right to effective assistance of counsel when his appellate counsel failed to raise
8    each of the aforementioned errors in Grounds One through Ten on direct appeal.
9    (FAP at 10, 18, 42-43.) The Court disagrees.

10    **1.    Applicable Law.**

11    A petitioner claiming ineffective assistance of counsel must show that
12    counsel's performance was deficient and that the deficient performance prejudiced
13    his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). "Deficient
14    performance" means unreasonable representation falling below professional norms
15    prevailing at the time of trial. Id. at 688-89. To show deficient performance, the
16    petitioner must overcome a "strong presumption" that his lawyer "rendered
17    adequate assistance and made all significant decisions in the exercise of reasonable
18    professional judgment." Id. at 690. Further, the petitioner "must identify the acts or
19    omissions of counsel that are alleged not to have been the result of reasonable
20    professional judgment." Id. The initial court considering the claim must then
21    "determine whether, in light of all the circumstances, the identified acts or
22    omissions were outside the wide range of professionally competent assistance." Id.

23    To meet his burden of showing the distinctive kind of "prejudice" required
24    by Strickland, the petitioner must affirmatively "show that there is a reasonable
25    probability that, but for counsel's unprofessional errors, the result of the proceeding
26    would have been different. A reasonable probability is a probability sufficient to
27    undermine confidence in the outcome." Id. at 694; see also Richter, 131 S. Ct. at
28    791 ("In assessing prejudice under Strickland, the question is not whether a court

1    can be certain counsel's performance had no effect on the outcome or whether it is

2    possible a reasonable doubt might have been established if counsel acted

3    differently."). A court deciding an ineffective assistance of counsel claim need not

4    address both components of the inquiry if the petitioner makes an insufficient

5    showing on one. Strickland, 466 U.S. at 697.

6         The Strickland standard also applies when considering claims regarding the

7    effective assistance of appellate counsel. Smith v. Robbins, 528 U.S. 259, 285

8    (2000). Appellate counsel, however, has no duty to raise every nonfrivolous issue

9    requested by a defendant. Jones v. Barnes, 463 U.S. 745, 751 (1983); see also

10    Robbins, 528 U.S. at 285-86 (to prevail on claim that appellate counsel was

11    ineffective for filing a Wende brief, petitioner must show that counsel unreasonably

12    failed to discover nonfrivolous issue and that there was a reasonable probability that

13    petitioner would have prevailed on appeal had counsel done so). The two prongs set

14    forth in Strickland "partially overlap" when evaluating the performance of appellate

15    counsel; in many instances , appellate counsel will fail to raise an issue because he

16    foresees little or no likelihood of success on the merits. Miller v. Keeney, 882 F.2d

17    1428, 1434 (9th Cir. 1989) (noting that "the weeding out of weaker issues is widely

18    recognized as one of the hallmarks of effective appellate advocacy"); see also

19    Wildman v. Johnson, 261 F.3d 832, 840-42 (9th Cir. 2001); Bailey v. Newland, 263

20    F.3d 1022, 1028 (9th Cir. 2001).

21         In Richter, the Supreme Court reiterated that the AEDPA requires an

22    additional level of deference to a state court decision rejecting an ineffective

23    assistance of counsel claim. "The pivotal question is whether the state court's

24    application of the Strickland standard was unreasonable. This is different from

25    asking whether defense counsel's performance fell below Strickland's standard."

26    Richter, 562 U.S. at 101.

27    **2. Analysis.**

28        Petitioner's conclusory allegations of ineffectiveness do not merit habeas

relief. Petitioner has made no adequate proffer, neither here nor in state court, shedding light on trial counsel's strategic approach at trial or appellate counsel's strategic approach on direct appeal. Instead, he offers only terse, self-serving, and conclusory allegations regarding, but not explaining, trial and appellate counsel's allegedly defective performance. See Gentry v. Sinclair, 705 F.3d 883, 900 (9th Cir. 2013) (where petitioner submitted declaration of some issues, but not the challenged instance of ineffectiveness, state court decision rejecting the claim was reasonable because the petitioner "had no evidence to indicate why [counsel's omission] was unreasonable under the circumstances"). Petitioner has not provided any declarations from counsel or an explanation regarding why he failed to procure such declarations to support his allegations. It is axiomatic that conclusory claims of ineffective assistance of counsel do not warrant habeas relief. See Dows v. Wood, 211 F.3d 480, 486-87 (9th Cir. 2000) (conclusory allegations of ineffective assistance of counsel which are not supported by statement of specific facts or affidavits do not warrant habeas relief); Jones v. Gomez, 66 F.3d 199, 204-05 (9th Cir. 1995) (vague speculation or mere conclusions unsupported by record not sufficient to state habeas claim); James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994) (conclusory allegations of ineffective assistance of counsel do not warrant habeas relief).

In any event, the California Court of Appeals could have reasonably concluded that Petitioner's counsel were not ineffective. The Court has found that all of Petitioner's claims are meritless. Any attempts by trial counsel to object to the issues raised by Petitioner's FAP would have been futile. "The failure to take a futile action can never be deficient performance." Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996); see also Juan H. v. Allen, 408 F.3d 1262, 1273 (9th Cir. 2005) (holding that trial counsel cannot have been ineffective for failing to raise a meritless objection); Jones v. Smith, 231 F.3d 1227, 1239 n.8 (9th Cir. 2008). Similarly, appellate counsel was not ineffective in failing to raise plainly meritless

1   claims on appeal. See Wildman, 261 F.3d at 840 ("[A]ppellate counsel's failure to

2   raise issues on direct appeal does not constitute ineffective assistance when appeal

3   would not have provided grounds for reversal.").

4        Petitioner is not entitled to relief on Grounds Eleven and Twelve.

5   **J.    Ground Thirteen: Cumulative Error.**

6        In Ground Thirteen of the Petition, Petitioner argues that the cumulative

7   prejudicial effect of the errors alleged above requires the reversal of his conviction.

8   (FAP at 11, 18, 44.) The Superior Court rejected this claim, concluding, "there is no

9   merit to any of the contentions posited by the appellant." (LD 4 at 28.)

10       In Chambers v. Mississippi, 410 U.S. 284 (1973), the Supreme Court found

11  that the combined effect of individual errors "denied [Chambers] a trial in accord

12  with traditional and fundamental standards of due process." Id. at 302. Citing

13  Chambers, the Ninth Circuit held in Parle v. Runnels, 505 F.3d 922 (9th Cir. 2007)

14  that "[t]he Supreme Court has clearly established that the combined effect of

15  multiple trial errors may give rise to a due process violation if it renders a trial

16  fundamentally unfair, even where each error considered individually would not

17  require reversal." Id. at 928.

18       However, the cumulative error doctrine applies only where multiple trial

19  errors of constitutional magnitude have been established. See Fairbank v. Ayers,

20  650 F.3d 1243, 1257 (9th Cir. 2011) ("[B]ecause we hold that none of [petitioner]'s

21  claims rise to the level of constitutional error, there is nothing to accumulate to a

22  level of constitutional violation") (citation omitted); Boyde v. Brown, 404 F.3d

23  1159, 1176 (9th Cir. 2005) ("Because we find no merit in Boyde's claims of

24  constitutional error in the guilt phase of his trial, we also reject his contention that

25  he was prejudiced by the cumulative effect of the claimed errors."); see also Hooks

26  v. Workman, 689 F.3d 1148, 1194-95 (10th Cir. 2012) ("[A]s the term 'cumulative'

27  suggests, [c]umulative-error analysis applies where there are two or more actual

28  errors. It does not apply … to the cumulative effect of non-errors") (citation and

1   internal quotation marks omitted); <u>Jones v. Stotts</u>, 59 F.3d 143, 147 (10th Cir,

2   1995) (noting that cumulative-error analysis evaluates only effect of matters

3   determined to be error, not cumulative effect of non-errors).

4        This Court has rejected all of the claims of constitutional trial error alleged in

5   the Petition. Thus, this Court necessarily finds that the Superior Court's rejection of

6   Petitioner's cumulative error claim was neither contrary to, nor involved an

7   unreasonable application of, clearly established Supreme Court law.

8        Accordingly, Petitioner is not entitled to relief on Ground Thirteen.

9   **K.   Petitioner's Request for an Evidentiary Hearing.**

10       Petitioner requests an evidentiary hearing to develop the facts in this case.

11  (FAP at 44.) In his Traverse, Petitioner lists a number of alleged factual disputes,

12  and he claims that the state process failed to produce just results. (Traverse at 13-

13  15.)

14       In an AEDPA case, where the state court adjudicated the Petitioner's federal

15  claims on the merits, as the state courts did here,[17] the federal habeas court's review

16  "is limited to the record that was before the state court that adjudicated the claim on

17  the merits." <u>Cullen</u>, 563 U.S. at 180. In addition, "[a]n evidentiary hearing is

18  pointless once the district court has determined that § 2254(d) precludes habeas

19  relief." <u>Sully v. Ayers</u>, 725 F.3d 1057, 1075 (9th Cir. 2013). The Court has

20  determined that none of Petitioner's claims warrant habeas relief, regardless of new

21  evidence that could be presented at an evidentiary hearing.

22  _____

23       [17] As noted above, the Superior Court's 2013 habeas decision was the
24  relevant state adjudication on the merits for Ground One (LD 4 at 25), the Superior
    Court's 2014 habeas decision was the relevant state adjudication on the merits for
25  Grounds Two through Four and Six through Ten (LD 4 at 26-27), and the
    California Court of Appeal's 2014 summary denial of Petitioner's claims was the
26  relevant state adjudication on the merits for Grounds Five, Eleven, and Twelve.
27  (LD 9.) Therefore, all claims were adjudicated on the merits before a state court.

28

1   Accordingly, Petitioner's request for an evidentiary hearing is denied.

2   **L.    Petitioner's Appeal to the "Miscarriage of Justice" Exception.**

3   In his Traverse, Petitioner asserts the "miscarriage of justice" exception
4   recognized by the Supreme Court in <u>McQuiggin v. Perkins</u>, __ U.S. __, 133 S.Ct.
5   1924 (2013). (Traverse at 4.) The miscarriage of justice exception is generally
6   relied upon to overcome a state procedural hurdle, providing a gateway into federal
7   habeas review that would otherwise be barred. <u>See</u> <u>McQuiggin</u>, 133 S. Ct. at 1931-
8   32 (discussing the application of the miscarriage of justice exception to overcome
9   various state procedural defaults). Here, there is no procedural hurdle to overcome;
10  the Court has reviewed each of Petitioner's claims on the merits, as the state courts
11  also did. Therefore, appealing to the miscarriage of justice exception does not
12  benefit Petitioner.

13  Even if Petitioner had properly raised the miscarriage of justice exception, he
14  would be unable to meet the exception's exceptionally high standard. The
15  miscarriage of justice standard serves to provide a "narrow exception" to the
16  ordinary rules of finality in federal habeas court proceedings, representing "a
17  kind of 'safety valve' for the 'extraordinary case.'" <u>Harris v. Reed</u>, 489 U.S.
18  255, 271, 109 S. Ct. 1038, 103 L. Ed. 2d 308 (1989) (O'Connor, J., concurring).
19  The miscarriage of justice exception applies where the alleged constitutional
20  violation "has probably resulted in the conviction of one who is actually innocent."
21  <u>Schlup v. Delo</u>, 513 U.S. 298, 321 (1995) (citation and internal quotation marks
22  omitted); <u>see</u> <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986). The <u>Schlup</u> exception is
23  "limited to those *extraordinary* cases where the petitioner asserts his innocence and
24  establishes that the court cannot have confidence in the contrary finding of guilt."
25  <u>Johnson v. Knowles</u>, 541 F.3d 933, 937 (9th Cir. 2008), <u>cert. denied</u>, 556 U.S. 1211
26  (2009) (citation omitted; original emphasis). "A petitioner who asserts only
27  procedural violations without claiming actual innocence fails to meet this standard."
28  <u>Id.</u> Here, Petitioner does not argue that he is innocent, nor does the Court find any

1  extraordinary constitutional violation in the state court proceedings to warrant any

2  such exception.

3  **M.    Petitioner's Additional Arguments in Traverse.**

4       In his Traverse, Petitioner raises a number of intended to rebut the

5  presumption of correctness afforded to the factual determinations of state court

6  rulings. (Traverse at 5-8; <u>see</u> 28 U.S.C. 2254(e)(1).) None of his arguments,

7  however, allege that any state court made unsupportable findings of fact. Rather, his

8  arguments alleged procedural flaws in the state court proceedings. First, Petitioner

9  argues that the prosecutor and trial court violated California Penal Code § 1009 by

10 amending the charging information without affording Petitioner a new preliminary

11 hearing to address the amended charges. (Traverse at 5-6.) Second, Petitioner

12 argues that having the same judge preside over trial and decide his state habeas

13 petition violates California Penal Code § 859(c). (<u>Id.</u> at 6-7.)[18]

14      These arguments do not rebut the § 2254(e)(1) presumption of correctness,

15 because they do not challenge the accuracy of any state court's factual findings.

16 Nor will the Court address these arguments as separate habeas claims for relief.

17 New habeas claims cannot be raised for the first time in reply. <u>See</u> <u>Delgadillo v.</u>

18 <u>Woodford</u>, 527 F.3d 919, 930 n.4 (9th Cir. 2008) (holding that reply is not the

19 proper pleading to raise additional grounds for relief); <u>Cacoperdo v. Demosthenes</u>,

20 37 F.3d 504, 507 (9th Cir. 1994) (same). Moreover, Petitioner's arguments only

21 allege violations of state law, which do not warrant federal habeas corpus relief. <u>See</u>

22 <u>Estelle</u>, 502 U.S. at 67-68. Further still, neither "claim" has been exhausted in state

23 court.

24

25 ───────────────

26      [18] Petitioner also contends that the presumption of correctness has been
    rebutted because the trial court violated California Evidence Code § 240. (Traverse

27 at 7-8.) This argument is addressed at n.10, above.

28

## VI.

## RECOMMENDATION

IT IS THEREFORE RECOMMENDED that the District Judge issue an Order: (1) accepting this Final Report and Recommendation, and (2) directing that Judgment be entered denying the Petition and dismissing this action with prejudice.


DATED: January 19, 2017

_____

KAREN E. SCOTT

UNITED STATES MAGISTRATE JUDGE


## NOTICE

Reports and Recommendations are not appealable to the Court of Appeals, but are subject to the right of any party to timely file Objections as provided in the Federal Rules of Civil Procedure and the instructions attached to this Report. This Report and any Objections will be reviewed by the District Judge whose initials appear in the case docket number.